J-A07005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC MATTHEW MUMAW | : | |
| | : | |
| Appellant | : | No. 234 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 9, 2020
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0000269-2017

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED:  OCTOBER 19, 2021**

Eric Matthew Mumaw appeals from his January 9, 2020 judgment of sentence of 204 to 488 months of incarceration, which was imposed after a jury found him guilty of third-degree murder, terroristic threats, prohibited offensive weapons, possessing an instrument of crime ("PIC"), abuse of a corpse, and recklessly endangering another person ("REAP").  We affirm.

We glean the relevant facts from the extensive certified record.  This case concerns the violent death of David Gombert, who was beaten and shot by Appellant on November 1, 2016.  The two men quarreled over the affections of a woman, Kirstyn Kankowski,[1] through text messages and social

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  By the time of Appellant's trial, Ms. Kankowski's last name had changed on account of marriage to a third party.  For the sake of clarity and consistency, we will use her maiden name throughout this writing.

media exchanges during the evening and early morning hours of Halloween 2016. In these communications, the parties mutually disparaged and threatened one another with veiled references to guns. Appellant posted a public statement on his Facebook account encouraging his acquaintances to film a "knockout video" featuring Gombert and requesting that Gombert be "found and brought" to him. N.T. Trial, 11/21/19, at 1471-72.

Appellant worked from 7:00 p.m. to 7:00 a.m. that evening and arrived home on the morning of November 1, 2016, shortly before 9:00 a.m. A few minutes thereafter, Gombert arrived uninvited at Appellant's residence and demanded to speak with him by shouting through Appellant's bedroom window. After arming himself with a pair of brass knuckles and a loaded handgun, Appellant descended from his second-floor bedroom, opened one of the doors to his three-bay garage, and confronted the unarmed Gombert from the threshold of his garage.[2] Appellant claimed that he immediately threatened Gombert with his firearm upon coming face-to-face with him and instructed him to leave the property. However, according to Appellant, Gombert advanced and pushed him. Appellant responded by punching

---

[2] Eric Skorpil, a friend of the victim, reported that he spoke with Gombert shortly before the shooting by cellular telephone. During that conversation, Gombert informed Skorpil that he had a handgun in his possession but reported unloading the gun and leaving it in his car prior to confronting Appellant. *See* N.T. Trial, 11/14/19, at 140. Officers at the scene of the shooting later recovered an unloaded gun from Gombert's vehicle. *Id*. at 290-94. No other weapons were found on Gombert's body.

Gombert in the head with his brass knuckles, which caused extensive blunt-force trauma to the victim's maxillary sinus. *See* N.T. Trial, 11/15/19, at 559-62. The Commonwealth's pathology expert opined the injury would have produced extensive internal and external bleeding and that Gombert was "aspirating blood" and in significant respiratory distress. *Id.* at 562-65.

Despite the severity of this injury, Appellant claimed that he observed no bleeding and that Gombert was undeterred in his alleged assault. He stated Gombert redoubled his efforts and tried to wrest away control of the gun. During the ensuing struggle, the tip of Appellant's left ring finger was shot off. Ultimately, Appellant claimed that he momentarily regained control of the gun and fatally shot Gombert once in the chest. After the shooting, Appellant dragged the victim's body from the garage to his driveway. He stowed his gun in his bedroom and hid the brass knuckles in his shoe. Several minutes after the shooting, he called 911 from his cell phone.

Officer Frederick J. Lahovski of the McAdoo Police Department was the first responder to the scene. His body camera was active that day and it captured him arriving and attempting to administer aid to Gombert. The camera also captured Officer Lahovski advising Appellant of his *Miranda* rights shortly after arriving.[3] *See* N.T. Trial, 11/18/19, at 746. With

_____

[3] "Before an individual is subjected to a custodial interrogation, he must make a knowing and intelligent waiver of his privilege against self-incrimination and right to counsel after adequate warnings as to those rights." *Commonwealth*
*(Footnote Continued Next Page)*

- 3 -

Appellant's consent, Officer Lahovski took possession of Appellant's cell phone a few minutes after 10:00 a.m. Gombert was ultimately pronounced dead.

Appellant was transported by EMS to Pottsville East Hospital for treatment of his gunshot wound. Corporal Eric Schaeffer of the Pennsylvania State Police ("PSP") accompanied Appellant and interviewed him over the course of approximately five hours as Appellant was undergoing treatment. Officers recovered the firearm from inside of Appellant's home. Corporal Shaeffer found the brass knuckles hidden in Appellant's shoe after searching the clothes and effects he voluntarily relinquished at the hospital. PSP also conducted a forensic examination of Appellant's cell phone, which yielded numerous text messages, social media communications, and photographs.

On November 3, 2016, Appellant voluntarily appeared at the PSP barracks in Frackville, Pennsylvania to be interviewed by Corporal Shaeffer and two other officers. Prior to questioning, Appellant was advised of his *Miranda* rights and executed a written waiver of those rights. During an interrogation that lasted approximately eight hours with intermittent breaks, Appellant admitted to, *inter alia*, striking Gombert with the brass knuckles during their struggle. Appellant was arrested and charged with the above-referenced offenses in addition to first-degree murder, voluntary manslaughter, and tampering with physical evidence.

---

*v. Johnson*, 727 A.2d 1089, 1100 (Pa. 1999) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)).

Appellant sought pre-trial relief, including: (1) suppression of statements he made during his conversations with law enforcement; (2) funds to obtain the services of a criminal investigator and several defense experts, *i.e.*, a forensic expert on blood splatter, a firearms expert on ballistics, and a computer expert; (3) exclusion of evidence extracted from his cell phone on authentication grounds; (4) leave to present testimony from his step-father, Donald Lowmaster, challenging the authenticity of the same electronic evidence; (5) that the jury be permitted to view the scene of Gombert's death; and (6) dismissal of all charges on the grounds that Appellant had acted in self-defense pursuant to the "castle doctrine."[4]

Several pre-trial hearings were held regarding these requests. Appellant's suppression motion was denied after the trial court found Appellant had received and understood the **Miranda** warnings given before both interviews. The trial court granted Appellant's requests for financial assistance in securing expert testimony and the services of a criminal investigator were granted. However, Appellant was, ultimately, "unable to secure them for the purposes of this case." N.T. Hearing, 7/19/19, at 4. With respect to the evidence seized from Appellant's cell phone, Appellant argued that the materials may have been tampered with by the PSP or by other unknown

---

[4] "[T]he castle doctrine is a specialized component of self-defense, which recognizes that a person has no duty to retreat from his or her home before using deadly force as a means of self-defense." **Commonwealth v. Childs**, 142 A.3d 823, 824 n.1 (Pa. 2016).

persons. *See* Memorandum, 10/25/19, at 1-10. The parties agreed that a ruling on the admissibility of the cell phone evidence would be held in abeyance until trial, at which time the Commonwealth would offer testimony and evidence to authenticate the challenged items as each was introduced. Appellant's related request to present testimony from Lowmaster after the trial court found he did "not possess the credentials and educational expertise to allow him to testify . . . concerning the lack of authenticity" of the Commonwealth's evidence. Order, 10/30/19, at ¶ 2. The trial court denied the request for the jury to view the crime scene. Finally, the trial court determined that the issue of self-defense would be submitted to the jury and denied Appellant's request for a blanket dismissal.

Appellant's jury trial was held from November 13 to November 22, 2019. The evidence from Appellant's cell phone was admitted after the trial court concluded it had been sufficiently authenticated by the Commonwealth. Ultimately, the jury found Appellant guilty of the offenses noted above, while finding him not guilty of tampering with evidence. On January 9, 2020, Appellant was sentenced to twenty to forty years of imprisonment for third-degree murder along with a consecutive sentence of four to eight months of imprisonment for abuse of a corpse. The trial court imposed concurrent terms of imprisonment on the remaining charges.

Appellant filed a timely post-sentence motion arguing that the sentence imposed was unreasonable and excessive. Before the trial court issued a

ruling, Appellant filed a premature notice of appeal to this Court. On February 20, 2020, the trial court denied Appellant's post-sentence motion.[5] The trial court and Appellant both complied with the mandates of Pa.R.A.P. 1925.

Appellant has raised the following issues for our consideration:

1. Did the trial court err or abuse its discretion in the court's ruling on Appellant's motion to suppress his statements to PSP?

2. Did the trial court err or abuse its discretion in the denial of Appellant's omnibus pre-trial motion seeking the appointment of expert witnesses and defense services?

3. Did the trial court err or abuse its discretion in the court's ruling on Appellant's motion *in limine* seeking to preclude the use of social media, text messages, or other electronic media?

4. Did the trial court err or abuse its discretion in the rulings as to the admissibility of the testimony of defense witness, Donald Lowmaster?

5. Did the trial court err or abuse its discretion in the denial of Appellant's motion for a jury view of the alleged crime scene?

6. Did the trial court err or abuse its discretion in failing to direct a verdict of not-guilty based upon the Appellant's defenses of the "castle doctrine" and self-defense?

7. Did the trial court err or abuse its discretion in the court's imposition of a sentence in the aggravated range?

---

[5] Pennsylvania Rule of Criminal Procedure 720 provides that "a judgment of sentence does not become final until post-sentencing motions are ruled upon by the trial court or are denied by operation of law." ***Commonwealth v. Borrero***, 692 A.2d 158, 161 n.4 (Pa.Super. 1997). Thus, Appellant's notice of appeal was premature. However, pursuant to Pa.R.A.P. 905(a)(5), "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Thus, we will treat Appellant's appeal as if it was filed on February 20, 2020, when the trial court denied his post-sentence motion.

8. Do the errors and/or abuses of discretion of the trial court, singularly or in combination, require Appellant's conviction to be vacated and the case remanded to the court of common pleas?

Appellant's brief at 5-6 (cleaned up; issues reordered).

Appellant's first claim for relief alleges that the trial court erred in not suppressing his statements to police. Although Appellant acknowledges that he received **Miranda** warnings on both occasions, he argues that his waiver was not voluntary. **See** Appellant's brief at 50-53.

In reviewing the denial of a suppression motion by a trial court, "[a]n appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Commonwealth v. Knox**, 50 A.3d 732, 746 (Pa.Super. 2012). "Where the record supports the factual findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." **Id**. "It is also well settled that the appellate court is not bound by the suppression court's conclusions of law," which are subject to "plenary" review. **Id.** "The validity of a waiver of **Miranda** rights is a question of law." **Commonwealth v. Becker**, 192 A.3d 106, 113 (Pa.Super. 2018).

"Police are required to read a suspect his **Miranda** warnings when he is in custody and subject to interrogation." **Commonwealth v. Williams**, 220 A.3d 1086, 1091 (Pa.Super. 2019). Whether a person is in custody "depends on whether the person is physically denied his freedom of action in any

significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Johnson*, 727 A.2d 1089, 1100 (Pa. 1999). Additionally, this inquiry also focuses upon "the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; . . . and the investigative methods employed to confirm or dispel suspicions." *Commonwealth v. Witmayer*, 144 A.3d 939, 948 (Pa.Super. 2016).

With respect to the first interview, we agree with the trial court's conclusion that Appellant was not in custody. *See* Opinion, 2/28/18, at 14-15 ("[Corporal] Schaeffer interviewed [Appellant] voluntarily while at the hospital emergency room over a period of time during intervals while [Appellant] was waiting to receive further treatment."). Here, the testimony at the suppression hearing established that the voluntary interviews with Appellant took place in various lobbies and rooms in the hospital during his treatment, often while other individuals were coming and going. *See* N.T. Suppression Hearing, 1/15/17, at 10-11. These exchanges were interrupted multiple times to permit Appellant to be evaluated and receive treatment. Throughout the course of these discussions, Appellant was a willing participant and offered no objection. The questioning ended when Appellant was required to travel to consult with a medical specialist.

In ***Johnson***, our Supreme Court concluded that police questioning carried out in an active hospital treatment room was not the equivalent of a custodial interrogation. In that case, the interview was conducted with the door open and another patient present in the room. As in ***Johnson***, we "do not find that Appellant's freedom of action was so restricted by the police questioning that he could reasonably believe that he was not free to terminate the interview." ***Id***. at 1101. Rather, "Appellant's inability to leave was not the result of any action of restraint by the police but was due to his physical condition at the time." ***Id***. at 1100 (cleaned up). Accordingly, there was no requirement that Appellant even be advised of his ***Miranda*** rights on November 1, 2016.[6] Hence, the statements from that interaction were properly admitted at Appellant's trial. ***See Johnson***, ***supra*** at 1000-01.

However, we cannot reach the same conclusion with respect to the custodial nature of the November 3, 2016. Although Appellant voluntarily arrived at the PSP barracks in Frackville, the ensuing questioning persisted for eight hours in the interrogation room of that police station. While he was permitted limited breaks during this time to use the bathroom or drink iced tea from a vending machine, our review of the testimony at the suppression hearing makes clear that Appellant's freedom of movement was substantially

---

[6] Furthermore, we note that Officer Lahovski informed Corporal Shaeffer at the scene of the shooting that Appellant had been warned pursuant to ***Miranda*** and that the exchange had been documented by his body camera. ***See*** N.T. Suppression Hearing, 11/15/17, at 27.

- 10 -

restricted. Furthermore, while there is no evidence of coercion, the testimony at the suppression hearing confirmed that the officers pressed Appellant on several details of his story by expressing disbelief and anger. Accordingly, this interaction bears the hallmarks of a custodial interrogation. There is no dispute that Appellant was advised of his **Miranda** rights on November 3. Thus, we will consider the voluntariness of his waiver that day.

"The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." **Commonwealth v. Nester**, 709 A.2d 879, 882 (Pa. 1998). Thus, the Commonwealth bears the burden to prove by a preponderance of the evidence that a defendant's **Miranda** waiver was knowing, intelligent, and voluntary. **Commonwealth v. Smith**, 210 A.3d 1050, 1058 (Pa.Super. 2018). This inquiry is bipartite in nature:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that **Miranda** rights have been waived[.]
>
> An examination of the totality of the circumstances includes a consideration of[:] (1) the duration and means of an interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors that

- 11 -

could drain a person's ability to withstand suggestion and coercion.

*Id*. (cleaned up).

Appellant's instant claim of coercion is solely based upon the length of the interview on November 3, 2016. Our Supreme Court has previously opined that "[t]ime is important but not of the essence. It must be considered with other factors but is not by mere passage determinative." *Commonwealth v. Perez*, 845 A.2d 779, 787 (Pa. 2004) (cleaned up). Rather, "in determining the admissibility of all the statements, . . . courts must consider the totality of the circumstances surrounding the confession." *Id*.

Appellant has failed to address the totality of the circumstances by focusing his arguments exclusively upon the length of the interrogation. Critically, he has not alleged the existence of any other coercive influence. This Court has recently found the same argument unavailing. *See Commonwealth v. Williams*, 2021 WL 2169059, at *6 (Pa.Super. 2021) ("While the duration of the interrogation was lengthy (eight hours), we find no other factors which could drain a person's ability to withstand suggestion and coercion, nor does [the appellant] allege any.").[7] Our review of the certified record has revealed no other factors that would indicate that Appellant's waiver was coerced. Furthermore, there is no evidence that

---

[7] Although this non-precedential memorandum is not binding, we may cite it for its persuasive value. *See Commonwealth v. Smith*, 244 A.3d 13, 17 n.6 (Pa.Super. 2020) (citing Pa.R.A.P. 126(b)(1)).

Appellant was so impaired that he was incapable of understanding the constitutional warnings provided by the PSP or otherwise coerced into waiving his *Miranda* rights.[8]  Accordingly, we discern no abuse of discretion or error of law in the trial court's conclusion that Appellant's *Miranda* waiver was voluntary, knowing, and intelligent.  No relief is due.

Appellant's second claim asserts his efforts to obtain the services of a criminal investigator and various expert witnesses were denied by an alleged lack of funding.  *See* Appellant's brief at 23-26.

"It is well-established that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings." *Commonwealth v. Konias*, 136 A.3d 1014, 1019 (Pa.Super. 2016) (cleaned up). Accordingly, the Commonwealth "has an affirmative duty to furnish indigent defendants the same protections afforded those financially able to obtain them." *Id*.  The decision to utilize public funds "to hire experts in the defense against criminal charges is . . . vested in the sound discretion of the

---

[8]  Appellant asserts on appeal that he was impaired by "prescribed narcotics for anxiety" that he was allegedly taking when he was interviewed by police on November 3, 2016.  *See* Appellant's brief at 52-53.  However, Appellant contemporaneously denied being under the influence of any such substances on November 3, 2016.  *See* N.T. Suppression Hearing, 11/15/17, at 38.  Since Appellant's claim of impairment is contradicted by the Commonwealth's evidence, we are bound to discount it.  *See Commonwealth v. Knox*, 50 A.3d 732, 746 (Pa.Super. 2012).  Moreover, "there is no *per se* rule of suppression based upon a mere showing of cognitive impairment." *Commonwealth v. Britcher*, 563 A.2d 502, 507 (Pa.Super. 1989).  Rather, a defendant's impairment must be substantial enough to render him incapable of understanding the warnings given.  *Id*.  No such showing was made here.

court and a denial thereof will not be reversed absent an abuse of discretion."

**Commonwealth v. Tighe**, 184 A.3d 560, 580 (Pa.Super. 2018).

The trial court determined that Appellant was indigent and ordered the Schuylkill County Public Defender to provide him with both expert witness funding and the assistance of a criminal investigator.[9] **See** Order, 10/11/18, at 1; Order, 2/16/18, at ¶ 5. Appellant requested and was awarded a budget of approximately $15,000 to secure three rebuttal experts in the areas of computer technology, ballistics, and blood spatter. On appeal, Appellant asserts these accommodations were inadequate. We disagree.

Appellant argues that he should have been granted unlimited resources to hire his preferred personnel, but our High Court has rejected this position:

> There is no obligation for the court to provide experts in every area where the Commonwealth will present expert testimony or to pay a defendant's experts commensurately. Furthermore, an indigent defendant does not have the right to choose his own expert or receive funds to hire his own. Appellant asked for experts and was given them by the trial court; the fact they were not the ones he would have chosen does not render them less effective or independent in their evaluation. What was required of the trial court was to provide the assistance of experts necessary to prepare a defense; the court was not obligated to issue a blank check for this.

---

[9] Appellant's brief concedes that a criminal investigator contacted potential witnesses on his behalf but concluded that "none of the witnesses sought to be interviewed were [sic] willing to talk . . . on [Appellant's] behalf." Appellant's brief at 25. To the extent that Appellant challenges the adequacy of the criminal investigator, no such objection was ever raised in the trial court. Thus, the issue is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

*Commonwealth v. Wholaver*, 989 A.2d 883, 895-96 (Pa. 2010) (cleaned up). The certified transcripts confirm the Appellant was given access to the experts he requested, but was unable to secure favorable testimony to aid in his defense. The following exchange took place in court:

> THE COURT: All right. And you did have the access to the three experts that we talked about before in prior Orders, but you're satisfied to move forward with the case based on what information you received at this juncture.
>
> [DEFENSE COUNSEL]: Correct, Your Honor. We will not secure any of those experts on behalf of the [d]efense. We will reserve our right to file a motion *in limine* in accordance with Your Honor's [o]rder.

*Id*. at 11-12. Thus, our review of the record confirms that Appellant was provided with the assistance of experts but elected not to call them at trial. Accordingly, we discern no abuse of discretion.

Appellant's third issue asserts that the trial court erred in holding that the Commonwealth had authenticated various text messages and social media communications extracted from his cell phone. This constitutes a challenge to the admissibility of evidence. "Rulings on admissibility are committed to the common pleas court's discretion and will only be reversed on appeal where there is an abuse of discretion. *Commonwealth v. Orr*, 255 A.3d 589, 594 (Pa.Super. 2021). "An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will." *Id*. at 594-95.

This issue implicates the authentication of evidence under Pennsylvania Rule of Evidence 901, which provides as follows: "[T]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Authentication under Rule 901 "entails a relatively low burden of proof; in the words of Rule 901 itself, simply 'evidence sufficient to support a finding that the item is what the proponent claims.'" **Commonwealth v. Murray**, 174 A.3d 1147, 1157 (Pa.Super. 2017) (quoting Pa.R.E. 901). "A proponent of a document need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder." **Gregury v. Greguras**, 196 A.3d 619, 633 (Pa.Super. 2018) (*en banc*). Accordingly, proof of "any circumstances" attesting to the provenance of evidence is sufficient to authenticate it. **Id**.

"[A]uthentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person." **Orr**, **supra** at 596. "[T]he difficulty that frequently arises in e-mail and text message cases is establishing authorship." **Commonwealth v. Koch**, 39 A.3d 996, 1004 (Pa.Super. 2011), *affirmed by an equally divided court*, 106 A.3d 705 (Pa. 2014). These concerns also "exist in reference to Facebook and other social media platforms." **Commonwealth v. Mangel**, 181 A.3d 1154, 1162 (Pa.Super. 2018). Such materials can be authenticated by: (1) testimony from either the author or the sender; (2)

circumstantial evidence, including "distinctive characteristics" like information specifying the author-sender or "reference to or correspondence with relevant events" preceding or following the message; or (3) "any other facts or aspects of the [message] that signify it to be what its proponent claims."[10] **Murray**, **supra** at 1156-57; **see also** Pa.R.E. 901(b)(1), (4). Thus, establishing the authenticity of such digital evidence requires "nuanced analysis of direct and circumstantial evidence." **Orr**, **supra** at 596-601 (collecting cases on authentication of digital material).

Appellant's authentication challenge targeted the following pieces of evidence: (1) Facebook messages between Appellant and Gombert from 8:43 p.m. to 8:59 p.m. on October 31, 2016, wherein Gombert shared a photo of Kankowski, Appellant objected to the two spending time together, and the two men threatened one another;[11] (2) Facebook messages between Appellant and an individual named Tim Sutch from 4:48 a.m. to 4:58 on November 1, 2016, wherein Appellant asked if Sutch knows Gombert, discussed his

---

[10] Pa.R.E. 901 was recently amended to include a subsection addressing digital evidence. **See** Pa.R.E. 901(b)(11). This amendment is consistent with the prior prevailing law and, thus, could be considered in our analysis of Appellant's claim. **See Commonwealth v. Collins**, 957 A.2d 237, 266 (Pa. 2008). However, "we will refrain from applying it herein, since trial took place in [Appellant's] case several years before the [amendment's] effective date." **Commonwealth v. Orr**, 255 A.3d 589, 601 n.3 (Pa.Super. 2021).

[11] Screenshots of this conversation were shared by Gombert with his friend, Eric Skorpil, who testified that Gombert had represented that Appellant had sent the messages. **See** N.T. Trial, 11/14/19, at 121-29.

Facebook campaign to locate and injure Gombert, mentioned Kankowski by name, and referred to being at work until 7:00 a.m. on November 1, 2016; (3) a Facebook message between Appellant and an individual named Kevin Reese at 5:02 a.m. on November 1, 2016, wherein Appellant referred to his Facebook campaign against the victim and asserted his desire to have him seriously injured; (4) Facebook messages between Appellant and an individual named Chris Smith from 5:25 a.m. to 6:19 a.m. on November 1, 2016, wherein Appellant identified Gombert by name and referenced a forty-five-minute break that he discussed taking at work in interviews with PSP; (5) text messages between Appellant and Kankowski from 6:30 a.m. to 8:57 a.m. on November 1, 2016, wherein the parties discussed Appellant's feud with Gombert;[12] (6) text messages between Appellant and an individual named Alyssa from 7:35 a.m. through 7:48 a.m. on November 1, 2016, wherein Appellant shared a screenshot of messages sent by Gombert and Alyssa referred to Appellant by name multiple times; and (7) text messages between Appellant and his mother from 9:21 a.m. to 9:55 a.m. on November 1, 2016, wherein Appellant asked her to come to the crime scene and shared pictures of Gombert's body. *See* N.T. Trial, 11/20/19, at 1116-1233, 1261-94.

Overall, we find no abuse of discretion in the trial court's authentication ruling. These materials were all extracted from a cell phone that indisputably

---

[12] Kankowski confirmed in her testimony at trial that she exchanged text messages with Appellant. *See* N.T. Trial, 11/19/19, at 796-97, 810-11.

- 18 -

belonged to Appellant and was under his control at the relevant times that the communications were sent. Both the cell phone number and the Facebook account associated with these messages were facially associated with Appellant's name. As detailed above in the description of each, authentication was further supported by either direct testimony identifying the communications or by clear internal contextual clues that identified Appellant as the only likely author. Accordingly, the Commonwealth satisfied the low burden for authentication under Rule 901. We find no cause to overturn the trial court's rulings. **See Orr**, **supra**, at 601 ("The circumstances surrounding these messages point only to Appellant.").

Appellant's fourth issue concerns testimony proffered by Lowmaster, Appellant's stepfather, who sought to testify at trial concerning alleged technical inconsistencies in the communications adduced by the Commonwealth. The trial court prohibited Lowmaster from testifying after concluding that he did "not possess the credentials and educational expertise to allow him to testify . . . concerning the lack of authenticity of the aforementioned exhibits." Trial Court Opinion, 5/29/20, at 15. Appellant argues that Lowmaster should have been permitted to offer his opinion regarding the Commonwealth's evidence as a lay witness. **See** Appellant's brief at 47-50. However, Appellant has offered no citations to legal authorities concerning the admission of lay opinion testimony in his brief. Such an oversight results in waiver of the underlying claim. **See Collins v. Cooper**,

746 A.2d 615, 619 (Pa.Super. 2000) ("Where an appellant has failed to cite any authority in support of a contention, the claim is waived."); **Commonwealth v. Russell**, 665 A.2d 1239, 1246 (Pa.Super. 1995) (same). Thus, this issue is waived.

Appellant's fifth claim for relief concerns the trial court's denial of his request that the jury be permitted to view the scene of the crime. He argues that a jury view was "absolutely crucial" because it permitted him to effectively rebut the Commonwealth's expert testimony. **See** Appellant's brief at 26-28.

As a general matter, it is within the trial court's discretion to grant or deny a request for a viewing of a particular place by the jury. **See Commonwealth v. Lowry**, 55 A.3d 743, 752 (Pa.Super. 2012) (citing Pa.R.Crim.P. 643(A)). "Absent an abuse of discretion, the denial of a request for a jury view will not be overturned." **Id**. An abuse of discretion "is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of the law." **Id**.

Here, the trial court concluded that a jury view was "unnecessary" in light of the "ample photographic, video [evidence] and reconstructionist mapping of [Appellant's] home and the crime scene" that was introduced at trial. Trial Court Opinion, 5/29/20, at 8. We agree. Appellant's arguments do not identify any salient benefit that would have been derived from a jury view of the crime scene. While Appellant claims that a jury view was necessary to challenge certain aspects of the Commonwealth's evidence at

trial, he has not articulated any such contested issues with specificity in his arguments. Our review of the transcripts confirms that the jury was provided with extensive video footage, photographs, diagrams, and testimony depicting the scene of Gombert's death in great detail. Further, the jury was shown a visual reconstruction that was drawn by Appellant, which was also admitted into evidence. *See* N.T. Trial, 11/21/19, at 1387. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's request. *See* **Lowry**, *supra* at 752 (upholding denial of jury view where the request was "unnecessary" in light of existing evidence documenting the relevant location).

Appellant's sixth claim for relief asserts that the Commonwealth did not adequately rebut his claim of self-defense with respect to his conviction for third-degree murder.[13] *See* Appellant's brief at 28-34. As noted above, Appellant's argument is focused upon the "castle doctrine," which is implicated

_____

[13] Appellant suggests that his assertion of self-defense should apply to all his convictions. *See* Appellant's brief at 28, 32 (arguing without specificity that the Commonwealth failed to produce sufficient evidence with respect to "each crime charged"). However, the only conviction that Appellant references in his substantive argument with any specificity is third-degree murder. *Id*. at 28-34. Furthermore, our review of the case law indicates that at least one of these crimes is not justifiable with reference to self-defense. *See* **Commonwealth v. Lawson**, 977 A.2d 583, 585 (Pa.Super. 2009) (holding that allowing the possession of prohibited offensive weapons for the purposes of self-defense would "nullify" the purpose of the statute). Overall, Appellant his failed to discuss the elements of these additional crimes or address the resulting interplay with 18 Pa.C.S. § 505. "This Court will not act as counsel and will not develop arguments on behalf of an appellant." **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa.Super. 2007). Thus, we will confine our analysis to Appellant's conviction for third-degree murder.

in this case since the struggle leading to Gombert's death occurred in Appellant's driveway and garage. *Id*. at 32 ("As [Appellant] was in his dwelling or residence, he is presumed to have acted reasonably in the eyes of the law in the use of deadly force.").

This claim is a challenge to the sufficiency of the Commonwealth's evidence. We bear the following basic legal principles in mind:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ventura*, 975 A.2d 1128, 1142 (Pa.Super. 2009) (cleaned up). As noted above, Appellant's arguments concern his conviction for third-degree murder, which is established "when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Id*.; *see also* 18 Pa.C.S. 2502(c). In this context, "'[m]alice is not merely ill-will, but, rather, wickedness of disposition,

- 22 -

hardness of heart, recklessness of consequences, and a mind regardless of social duty.'" ***Id***. (quoting ***Commonwealth v. Hardy***, 918 A.2d 766, 774 (Pa.Super. 2007)). Such malice may be inferred from the use of a deadly weapon on a vital part of the victim's body. ***Ventura***, ***supra*** at 1142.

Under Pennsylvania law, the use of deadly force is justified under the rubric of self-defense if the defendant: (1) was free from fault in provoking or continuing the difficulty which culminated in the slaying; (2) reasonably believed he was in imminent danger of death or serious bodily injury, and (3) did not violate any duty to retreat or to avoid the danger. ***See Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012). The defendant has "no burden to prove" a self-defense claim. ***Commonwealth v. Torres***, 766 A.2d 342, 345 (Pa. 2001). Our Supreme Court has stated that "[i]f there is **any** evidence that will support the claim, then the issue is properly before the fact finder." ***Id***. at 345 (emphasis added).

"If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." ***Commonwealth v. Houser***, 18 A.3d 1128, 1135 (Pa. 2011). The jury is not required to believe the testimony of the defendant who asserts self-defense. ***Commonwealth v. Carbone***, 574 A.2d 584, 589 (Pa. 1990). However, "[w]hen the defendant's own testimony is the only evidence of self-defense, the Commonwealth must still disprove the asserted justification and cannot rely on the jury's disbelief of the defendant's testimony[.]"

*Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa.Super. 2014). The Commonwealth sustains this burden by establishing beyond a reasonable doubt that the accused: (1) did not reasonably believe that he was in danger of death or serious bodily injury; (2) provoked or continued the use of force; or (3) had a duty to retreat where such retreat was possible. *Id.* at 787.

Claims of self-defense also implicate 18 Pa.C.S. § 505, which our General Assembly adopted in 1967 "to codify existing case law pertaining to 'self-defense' and cover in a single rule the law governing the use of defensive force against both attack and in crime prevention." 18 Pa.C.S. § 505, Official Note; *but see Commonwealth v. Childs*, 142 A.3d 823, 832 (Pa. 2016) (concluding that the legal presumptions provided under § 505 are merely an "evidentiary mechanism to aid in the factfinder's evaluation of the merits of a castle doctrine defense" that does not "alter either the elements of a castle doctrine defense or the historical right to use deadly force in one's home").

This statute provides as follows:

**(a) Use of force justifiable for protection of the person.**--
The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.**--

. . . .

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury,

kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

(2.1) [With exceptions not relevant in the instant case], an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:

(i) The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.

(ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

. . . .

(2.5) Unless one of the exceptions under paragraph (2.2) applies, a person who unlawfully and by force enters or attempts to enter an actor's dwelling, residence or occupied vehicle or removes or attempts to remove another against that other's will from the actor's dwelling, residence or occupied vehicle is presumed to be doing so with the intent to commit:

(i) an act resulting in death or serious bodily injury; or

(ii) kidnapping or sexual intercourse by force or threat.

18 Pa.C.S. § 505.

Given that the altercation with Gombert occurred in the driveway and garage of his dwelling, Appellant's self-defense arguments are focused upon § 505(b)(2.1), the statutory enshrinement of the castle doctrine, and the elimination of the duty to retreat set forth at § 505(b)(2)(ii). Pursuant to these provisions, Appellant was presumed to have reasonably believed that the use of deadly force was necessary and was not obligated to retreat from his own dwelling. We note that the jury was instructed in conformity with these principles and Appellant received the benefit of these evidentiary presumptions during the deliberations. *See* N.T. Trial, 11/21/19, at 1559-60, 1562-63. However, Appellant's arguments ignore the third element of self-defense, *i.e.*, that he must not have provoked or continued the use of force.

"To claim self-defense, the defendant must be free from fault in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force." **Smith**, **supra** at 788 (citing **Mouzon**, **supra** at 752); **see also** 18 Pa.C.S. § 505(b)(2)(i) ("The use of deadly force is not justifiable . . . if the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the

same encounter[.]"). Indeed, the jury in Appellant's case was also instructed on this point, as follows:

> Consider the realities of the situation faced by [Appellant] here when you assess whether the Commonwealth has proved beyond a reasonable doubt . . . that in the same encounter with David Gombert, [Appellant] provoked the use of force against him by engaging in conduct that demonstrated that he intended to cause death or serious bodily injury to David Gombert.

N.T. Trial, 11/21/19, at 1561. Even assuming, *arguendo*, that Appellant had a reasonable belief that the use of deadly force was necessary and had no duty to retreat, we find that Commonwealth produced sufficient evidence that Appellant provoked or continued the use of force in this case.

The use of deadly force "cannot be viewed in isolation with [the victim] as the sole physical aggressor and [the defendant] acting in responsive self-defense. [T]his would be an incomplete and inaccurate view of the circumstances for self-defense purposes." *Mouzon*, *supra* at 751. The altercation between Gombert and Appellant was not merely a physical struggle, but was the "culmination" of an extended interaction. *Id*. At that critical moment, Appellant voluntarily descended from the safety of his second-story bedroom to forego the protections offered by multiple locked or lockable doors that separated him from Gombert. The victim had made no effort to forcibly enter Appellant's dwelling, but Appellant armed himself and confronted Gombert in spite of the threats of violence they had exchanged mere hours earlier. Appellant thereby precipitated a physical confrontation that could have otherwise been avoided. Under similar circumstances, this

Court has previously concluded that the defendant had provoked the fatal encounter. *See Commonwealth v. Correa*, 648 A.2d 1199, 1202-03 (Pa.Super. 1994) (holding defendant "provoked or continued" a deadly altercation by descending from the safety of a third-story apartment with a firearm to confront the victim despite the victim's earlier "threats to kill him"), *abrogated in part on separate grounds*, *Commonwealth v. Weston*, 49 A.2d 458, 461-62 (Pa. 2000). This, alone, defeats Appellant's claim of self-defense.

Pursuant to *Correa*, Appellant provoked the use of deadly force. There is ample evidence to support the conclusion that he acted with the intent to cause serious bodily injury or death. As detailed above, Appellant sent a multitude of text messages and social media communications cataloging his desire to kill Gombert and describing in graphic detail how he would, *inter alia*, "brass knuckle" the victim's face until "you can't tell what he looks like." N.T. Trial, 11/22/19, at 1478. These communications evinced Appellant's desire to kill or maim Gombert, which speaks directly to his intent. Appellant's use of an illegal offensive weapon to horrifically injure Gombert further corroborates such intent.[14]

Furthermore, the Commonwealth has not merely relied upon the jury's mere disbelief of Appellant's narrative. The Commonwealth's evidence

---

[14] Specifically, 18 Pa.C.S. § 908 strictly criminalizes the possession or use of any "offensive weapon" such as "metal knuckles." 18 Pa.C.S. § 908(a), (c). Under the law of Pennsylvania, such a weapon exists for no other reason than "for the infliction of serious bodily injury." *Id*.

undercut Appellant's claims that Gombert neither bled nor exhibited any distress after he was struck with the brass knuckles. This discrepancy raised serious questions as to whether the incident had occurred as Appellant described. Appellant's attempts to conceal the brass knuckles provides additional indicia of his guilt. *See Commonwealth v. Bradley*, 69 A.3d 253, 258-59 (Pa.Super. 2013) ("[D]efendant's attempts to cover up after a crime can be inferred to demonstrate a consciousness of guilt."). Finally, Appellant's use of a firearm on a vital portion of Gombert's body provided a sufficient basis for the jury to infer the presence of malice in order to sustain Appellant's conviction for third-degree murder. *Ventura*, *supra* at 1142.

Viewing this evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there was sufficient evidence for the jury to conclude that Appellant "provoked or continued" the altercation with Gombert and was guilty of third-degree murder. We may not substitute our credibility determinations for that of the jury. Thus, no relief is due.

Appellant's seventh claim for relief challenges the sentence imposed by the trial court. He argues that his crimes were an "aberrant" occurrence and that the trial court did not adequately consider his mitigating evidence. Appellant's brief at 53-61. This claim implicates the discretionary aspects of Appellant's sentence. A defendant is not entitled to review of challenges to the discretionary aspects of sentence as of right, but must invoke this Court's jurisdiction by fulfilling four separate requirements, namely: (1) filing a timely

notice of appeal; (2) preserving the issue at sentencing or a timely post-sentence motion; (3) attaching a concise statement in his brief pursuant to Pa.R.A.P. 2119(f); and (4) raising a "substantial question" that the sentence appealed from is not appropriate under the Pennsylvania Sentencing Code. ***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa.Super. 2014).

Appellant has complied with the first two of these requirements by filing a timely post-sentence motion and a timely appeal. Appellant, however, has not included a Rule 2119(f) statement in his brief to this Court. The Commonwealth has not objected to this oversight. "When the Commonwealth does not object to the omission of a Rule 2119(f) statement, this Court can overlook the omission if the presence or absence of a substantial question can be easily determined from the appellant's brief." ***Commonwealth v. Maneval***, 688 A.2d 1198, 1199 (Pa.Super. 1997). Accordingly, we will proceed to determine if Appellant has raised a substantial question in his brief.

Appellant argues that the sentencing court imposed an excessive sentence without due consideration of certain mitigating factors. This Court has previously found that "an excessive sentence claim, in conjunction with an assertion that the court did not consider mitigating factors," raises a substantial question. ***See Commonwealth v. Dodge***, 77 A.3d 1263, 1272 (Pa.Super. 2013) (citing ***Commonwealth v. Perry***, 883 A.2d 599, 602 (Pa.Super. 2005)). Thus, we will address the merits of Appellant's claim.

We bear the following well-established legal principles in mind:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super. 2006). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957, 564-65 (Pa. 2007).

Accordingly, Pennsylvania law provides that

[t]he appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c). Under the same sentencing statute, we must also "have regard" for: (1) the nature and circumstances of the offense and the history

- 31 -

and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) the findings upon which the sentence was based; and (4) the Pennsylvania Sentencing Guidelines. 42 Pa.C.S. § 9781(d)(1)-(4).

The sentencing court is charged to impose a sentence that is "consistent" with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Additionally, the court is required to "disclose in open court at the time of sentencing, a statement of the reasons or reasons for the sentence imposed." *Id*. Where, as here, the sentencing court had the benefit of a presentence investigation report ("PSI"), "we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa.Super. 2010). Finally, "[a]lthough Pennsylvania's system stands for individualized sentencing, the court is **not** required to impose the 'minimum possible' confinement." ***Id***. (emphasis added) (quoting ***Walls***, ***supra*** at 965).

Appellant's sentence is composed of the following components: (1) two hundred forty to four hundred eighty months of imprisonment for third-degree murder; (2) a consecutive term of four to eight months of imprisonment for abuse of a corpse; (3) a concurrent term of one to two months of

imprisonment for terroristic threats; (4) a concurrent term of three to six months of imprisonment for prohibited offensive weapons; and (5) a concurrent term of one to two months of imprisonment for possessing an instrument of crime. **See** Order, 1/9/20, at 1. We note that all of these terms of incarceration are within the standard range set forth by the Pennsylvania Sentencing Guidelines.[15] **See** 204 Pa. Code §§ 303.15, 303.16(a); **see also** 18 Pa.C.S. § 1103(1) (providing for a maximum sentence of twenty years for a conviction of a first-degree felony).

We find no abuse of discretion in the sentence imposed. Initially, we emphasize that Appellant has not identified any mitigating factors that the trial court ignored aside from his lack of previous convictions. Appellant's lack of a criminal record, however, was already factored into his sentence by way of his prior record score. **See** 204 Pa. Code § 303.5. Moreover, the sentencing court had the benefit of a PSI and, thus, it may be presumed that the court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988).

Indeed, the sentencing court stated its reasons for the sentence imposed, at length, and concluded that a maximum standard-range sentence

---

[15] We note that "the sentencing guidelines provide for **minimum** and not maximum sentences." **Commonwealth v. Yeomans**, 24 A.3d 1044, 1049 (Pa.Super. 2011) (emphasis added).

was appropriate in light of Appellant's actions.  *See* N.T. Sentencing, 1/9/20, at 38-41.  With specific reference to Appellant's homicide sentence, this Court has previously held that a standard-range sentence for third-degree murder imposed with the benefit of a PSI "can be considered to be neither excessive nor unreasonable."  ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 546 (Pa.Super. 1995); ***see also Ventura***, ***supra*** at 1135 (same).  Accordingly, we find no merit in Appellant's challenge to his sentence.

Appellant's final claim for relief is merely a catchall question parroting his earlier discussion of alleged errors.  However, Appellant has not offered any additional argument aside from listing it in his statement of questions presented.  ***See*** Appellant's brief at 5.  To the extent that Appellant relies upon this issue for relief, we conclude that it is waived for lack of development in the argument section of Appellant's brief.  ***See Commonwealth v. Spotz***, 18 A.3d 244, 281 n.21 (Pa. 2011) (finding waiver where no "developed, reasoned, supported, or even intelligible argument" is asserted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2021