J-S48037-20

2020 PA Super 291

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
SHAHEED SMITH :
:
Appellant : No. 107 EDA 2020

Appeal from the PCRA Order Entered December 4, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007787-2014

BEFORE: KUNSELMAN, J., KING, J., and McCAFFERY, J.

OPINION BY McCAFFERY, J.: **FILED DECEMBER 21, 2020**

Shaheed Smith (Appellant) appeals, *pro se*, from the order entered in the Philadelphia County Court of Common Pleas dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA),[1] seeking collateral relief from his jury convictions of aggravated assault, robbery, kidnapping, arson, possession of an instrument of crime (PIC), and three counts of criminal conspiracy.[2] On appeal, Appellant argues the PCRA court erred in failing to conduct a hearing on his claims involving the ineffectiveness of all prior counsel. Because we conclude the PCRA court had no jurisdiction to consider

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 2702(a)(1), 3701(a)(1)(ii), 2901(a)(1), 3301(a)(1)(i), 907(a), and 903, respectively.

Appellant's petition before his judgment of sentence became final, we are constrained to quash this appeal.

The facts underlying Appellant's convictions were summarized by this Court in the memorandum decision affirming his judgment of sentence on direct appeal:

> This case arises from the brutal robbery of Kevin Slaughter by Appellant and his four co-defendants, Timothy Gooden, Kylieff Brown, Christopher Cooley, and Kareem Cooley, after a chance meeting between Slaughter and Brown at the SugarHouse Casino. . . .
>
> On December 8, 2013, at approximately 8:00 p.m., Slaughter ran into Brown, whom he knew from prison, at the casino. Brown and his cohorts set into motion an elaborate scheme to steal Slaughter's approximately $4,000.00 in winnings. During the protracted episode, they shot Slaughter multiple times, threw him into a van, beat him, contacted his wife to extract ransom, and set the van used in the incident on fire.
>
> Police learned that Jeffrey Gray, Appellant's cousin, owned the subject van, a cleaning company vehicle with Soft Touch Carpet Cleaning written on the side of it. Gray gave a statement to police on the morning of December 9, 2013, and advised that he had observed Appellant driving the van the night before. Gray provided two cellphone numbers for Appellant: (267) 307-2119; and (215) 586-0759, a number to a phone Appellant had lost. While Gray was at the police station, he received a call from Appellant, who repeatedly asked him to report the van stolen.[2]
>
> _____
>
> [2] Police did not contemporaneously document the phone number from which Appellant placed this call.
>
> _____
>
> Police obtained search warrants for the defendants' cellphone records, which showed frequent contact between them immediately before, during and after the crime.[3] The Federal Bureau of Investigation (FBI) was able to reconstruct the conspirators' approximate locations throughout the crime using historical cell site data. Appellant was arrested on June 5, 2014.

_____

[3] Cellphone records showed that, during the relevant time period, Christopher Cooley's phone had ten contacts (calls or text messages) with a phone associated with Appellant (the number ending in 2119); Timothy Gooden's phone had nine contacts with the 2119 number and four contacts with the second phone number associated with Appellant.

*Commonwealth v. Smith*, 3884 EDA 2016 (unpub. memo. at 1-3) (Pa. Super. Apr. 16, 2018) (record citations and some footnotes omitted).

Appellant was subsequently charged with numerous offenses including attempted murder.[3]  On June 13, 2016, a jury acquitted Appellant of attempted murder, but found him guilty of the above-stated offenses.  On November 21, 2016, the trial court sentenced Appellant to an aggregate term of 15 to 30 years' imprisonment, followed by seven years' probation.

Appellant filed a timely direct appeal, and this Court affirmed Appellant's judgment of sentence on April 16, 2018.  *See Smith*, 3884 EDA 2016. Thereafter, Appellant filed a petition for allowance of appeal in the Pennsylvania Supreme Court.  While that petition was still pending, Appellant filed the present PCRA petition, *pro se*, on September 19, 2018.  Counsel was promptly appointed.  Nearly three months later, on December 4, 2018, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal.  *See Commonwealth v. Smith*, 215 EAL 2018 (Pa. Dec. 5, 2018).

_____

[3] 18 Pa.C.S. §§ 901, 2502.

On September 10, 2019, PCRA counsel filed a petition to withdraw and a **Turner**/**Finley**[4] "no merit" letter.  On October 30, 2019, the PCRA court issued notice of its intent to dismiss the petition without first conducting an evidentiary hearing pursuant to Pa.R.Crim.P. 907.  Appellant did not file a response.  Thus, on December 4, 2019, the PCRA court entered an order dismissing Appellant's PCRA petition and granting counsel's petition to withdraw.  This timely appeal follows.[5]

Appellant identifies the following three issues in his brief:

1)  Whether the PCRA Court failure [sic] to conduct the requested evidentiary hearing on ineffective assistance of counsel denied [Appellant] Due Process under the 14th Amendment of the United States Constitution, since . . . Appellant was denied the opportunity to cross-examine trail counsel's [sic] about errors, develop a factual record and present evidence on the claim which the Court could have considered.

2)  Trail, [sic] Direct, PCRA Counsel were ineffective during all stages.

3)  Whether . . . Appellant is entitled to relief from his conviction and sentence due to the cumulative effects of the errors of counsels.

Appellant's Brief at 3.

When reviewing an order denying PCRA relief, we must "determine whether it is supported by the record and is free of legal error."

---

[4] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[5] Appellant complied with the trial court's directive and filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

*Commonwealth v. Cousar*, 154 A.3d 287, 296 (Pa. 2017). Furthermore, we note:

> [T]he PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied "there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings." "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing."

*Id.* at 297 (citations and some punctuation omitted).

Although Appellant purports to raise three separate issues on appeal, they are all related. The crux of his argument is that the PCRA court erred when it failed to conduct an evidentiary hearing on his claim that trial counsel was ineffective for failing to obtain evidence which could have been used to impeach the Commonwealth's key witness, his cousin Jeffrey Gray. Appellant's Brief at 7. Appellant maintains Gray's "Parole Violation Record . . . would have revealed Mr. Gray was arrested for trying to enter a prison with a fake identification." *Id.* Had counsel obtained this information, Appellant asserts, he could have used it to "attack[ ] Mr. Grays [sic] credibility and probably created a reasonable doubt." *Id.* at 9. Appellant insists an evidentiary hearing was required so that he could determine whether trial counsel "even conducted a background check on Mr. Gray" or tried to obtain this information. *Id.* at 7. Thus, he contends he is entitled to "remand, an Evidentiary Hearing and PCRA relief in the form of a new trial." *Id.* at 11.

- 5 -

However, before we may address Appellant's substantive claim, we must first determine whether the trial court had jurisdiction to consider his PCRA petition. Pursuant to the Act, a PCRA petition "shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S. § 9545(b)(1). Further, Section 9545 explains:

> For purposes of this subchapter, **a judgment becomes final at the conclusion of direct review, including discretionary review** in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

42 Pa.C.S. § 9545(b)(3) (emphasis added).

Here, Appellant's petition was clearly premature. The PCRA petition was filed while his petition for allocatur review was pending in the Pennsylvania Supreme Court. The PCRA court acknowledged the premature filing, but chose to "accept[ ] the filing as of the date that allocatur was denied." PCRA Ct. Op., 2/28/20, at 2. **See also** N.T. H'rg, 9/26/19, at 4 ("Although [Appellant] filed his PCRA prematurely, this Court accepted it."). However, we conclude the PCRA court had no authority to do so. Indeed, at the time Appellant filed this petition, his direct appeal was pending in the Pennsylvania Supreme Court, and the PCRA court had no jurisdiction to "hold" the premature filing until the appeal was denied.

It is well-settled that "[a] PCRA petition may **only** be filed after an appellant has waived or exhausted his direct appeal rights." **Commonwealth v. Leslie**, 757 A.2d 984, 985 (Pa. Super. 2000). Indeed, "[t]he PCRA provides petitioners with a means of collateral review, but has no applicability until the

judgment of sentence becomes final." ***Commonwealth v. Kubis***, 808 A.2d 196, 198 n.4 (Pa. Super. 2002). Furthermore, this Court has explained: "If a petition is filed while a direct appeal is pending, the PCRA court should dismiss it without prejudice towards the petitioner's right to file a petition once his direct appeal rights have been exhausted." ***Commonwealth v. Williams***, 215 A.3d 1019, 1023 (Pa. Super. 2019) (citation omitted); ***see also Commonwealth v. Seay***, 814 A.2d 1240, 1241 (Pa. Super. 2003) (concluding appellate court was required to quash appeal from denial of PCRA relief when petitioner's direct appeal was still pending because properly filed notice of direct appeal was never received by Superior Court prothonotary).

In the present case, however, the PCRA court "accepted" the premature filing and held it until **after** Appellant's direct appeal was final. ***See*** PCRA Ct. Op. at 2; N.T. H'rg, 9/26/19, at 4. Our review of the relevant statutory and case law reveals no support for the PCRA court's actions. Once an appeal is filed, a trial court has no jurisdiction to proceed further in the matter, absent limited exceptions not applicable here. ***See*** Pa.R.A.P. 1701(a). Accordingly, the PCRA court should have promptly quashed Appellant's petition because it was filed while his direct appeal was pending in the Supreme Court. The fact that the PCRA court declined to do so is of no consequence. "In the PCRA context, statutory jurisdiction cannot be conferred by silence, agreement or neglect." ***Commonwealth v. Ballance***, 203 A.3d 1027, 1033 (Pa. Super. 2019) (citation omitted), *appeal denied*, 216 A.3d 1044 (Pa. 2019).

This Court's memorandum decision in **Commonwealth v. Neisser**, 1968 EDA 2019 (unpub. memo) (Pa. Super. 2020), is instructive.[6] In that case, the defendant was granted post-sentence relief and resentenced on July 7, 2017. **Id.** at 2. He then filed a *pro se* PCRA petition on August 2, 2017, **before** the 30-day period for filing a direct appeal had expired. **Id.** Thereafter, the PCRA court appointed counsel, granted counsel's petition to withdraw, permitted the defendant to proceed *pro se*, and, after an evidentiary hearing, denied the petition on the merits. **Id.** at 2-3.

On appeal, a panel of this Court, *sua sponte*, determined it was without jurisdiction to consider the appeal from the denial of PCRA relief. **See Neisser**, 1968 EDA 2019 (unpub. memo. at 5). The panel noted: "Case law is clear that a premature PCRA petition must be quashed." **Id.** Furthermore, the panel concluded, "[s]ince there are no exceptions to the PCRA's time requirements, [the] premature filing was a legal nullity, and the PCRA court lacked authority to consider it and should have dismissed it without prejudice towards [the petitioner's] right to file a PCRA petition once the time for him to file a direct appeal had expired." **Id.** at 5-6. Thus, the **Neisser** panel quashed the appeal. **Id.** at 6.

---

[6] Unpublished, non-precedential decisions of this Court filed after May 1, 2019, "may be cited for their persuasive value." Pa.R.A.P. 126(b)(1)-(2); 210 Pa. Code § 65.37(B).

Our review of the present case leads to the same result. Here, the PCRA court had no jurisdiction to accept, hold, and later dispose of Appellant's premature PCRA petition before his judgment of sentence was final. Thus, Appellant's PCRA petition, as well as the PCRA court's order denying it, were both legal nullities. As such, we are constrained to quash this appeal.[7]

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/20

---

[7] We note that even if we had jurisdiction to address the PCRA court's ruling, we would find no basis to disagree. Essentially, Appellant contends trial counsel was ineffective for failing to introduce impeachment evidence that Commonwealth witness Gray was **arrested** on a parole violation for attempting to enter a prison using a fake identification. **See** Appellant's Brief at 7. However, pursuant to the Pennsylvania Rules of Evidence, "the character of a witness for truthfulness may not be attacked . . . concerning specific instances of the witness's conduct," with the exception of evidence "that the witness has been convicted of a crime [which] involved dishonesty or false statement." **See** Pa.R.E. 608(b), 609(a). Here, Appellant does not assert Gray was **convicted of a crime** involving dishonesty or false statement. Thus, any evidence that Gray may have attempted to use a fake identification would not have been admissible as impeachment evidence; accordingly, counsel would have had a reasonable basis for failing to present this purported evidence. **See Cousar**, 154 A.3d at 296-97 (in order to establish ineffectiveness of counsel, an appellant must prove "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) appellant suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different") (citation omitted).