J-S12032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TONY BRENT SHOWER, JR. | : | |
| | : | |
| Appellant | : | No. 1248 MDA 2022 |

Appeal from the PCRA Order Entered August 5, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007642-2018

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:               **FILED: JUNE 7, 2023**

Appellant, Tony Brent Shower, Jr., appeals from the order denying his first petition filed under the Post Conviction Relief Act (PCRA)[1] alleging claims of ineffective assistance by the attorneys who represented him at his jury trial and on direct appeal.  We affirm.

This Court previously set forth the following summary of the evidence presented at trial:

> On November 22, 2016, a van struck and killed four-year-old D.W. in front of her home in Hanover Borough, York County.  The van's driver did not stop at the scene of the accident. . .
>
> At trial, Natalie Meckley (Meckley), D.W.'s older half-sister, testified that she drove to York with two of her friends and D.W. on the day of the accident.  When the group returned just after 7:00 p.m., Meckley parked across the street from her parents'

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

home. Meckley saw a van "fly past" in the opposite direction as she got out of the car, unaware that D.W. was no longer in the backseat. Meckley then heard a "loud noise" that she described as "an impact sound." At first, she thought that the van hit a "trash can or something." However, when she saw D.W. laying in the roadway, Meckley realized that the van had struck her sister and rushed inside her parents' home to get help.

Matthew Markle (Markle), a neighbor down the street, testified that he heard a "loud crunch" and thought it was a garbage can. Turning toward the noise, Markle saw a white utility van driving toward him and noticed that it had a roof rack with a ladder. Despite it being dark out, Markle saw that the van's driver was a white male with a dark "scruffy beard or goatee" and had no passenger with him.

Sergeant Matthew Waltersdorff was the first to arrive. After an ambulance left with D.W., he secured the scene and began reconstructing the accident. Based on his review, he made several findings. First, there were no skid marks on the road, suggesting that the driver did not take any evasive actions or brake before or after the accident. Second, there was a trail of blood on the road that included several smears typical of a person being dragged by a vehicle. By mapping the blood marks, Sergeant Waltersdorff determined that the van dragged D.W. over three car lengths from the area of impact to the final resting place. Finally, using footage from a neighbor's security camera, Sergeant Waltersdorff determined that the van was going 22 miles per hour just before the accident.

Within minutes of the accident, the police issued a "be on the lookout" (BOLO) for the van. Officer John Carbaugh testified that he was on patrol in a neighboring township when he saw a van matching the BOLO around 7:30 p.m. After pulling over the van, Officer Carbaugh questioned the driver, Stephen Gambal (Gambal) and his passenger, Shower. Gambal was evasive at first in answering questions. However, when the officer told him the reason for the stop, Gambal became more relaxed and denied being in an accident. After finding no fresh damage on the van, Officer Carbaugh released Gambal and Shower. A few hours later, however, the police pulled over Gambal again. Gambal was in the van by himself and had crack cocaine and drug paraphernalia. After failing field sobriety tests, he was arrested for DUI and drug possession. As a result, the police towed his van and inspected it again. This time, the police found blond hair in the driver's side

headlight, leading to a search warrant for the van; DNA testing of the hair later matched it to D.W., confirming that Gambal's van was involved in the accident.

Lieutenant Scott James, a detective with the District Attorney's office, testified about the damage to the van. First, there was a long scratch on the front bumper that, according to him, matched the zipper on the jacket D.W. was wearing at the time of the accident. He also found several distinct marks on the bumper that he believed were "finger marks" and an apparent fabric transfer pattern on the van, explaining that such transfers are common when a person is struck by a vehicle and their clothing pattern is visible on the car. Moving to the front grill, he testified that the driver's side portion was pushed in while the passenger's side stuck out. Additionally, after he removed the grill, he discovered that there were several pieces of plastic that had broken off and were missing. When he then removed the headlight, he discovered the plastic pieces. In his view, the accident caused this damage, stating that he would not have expected to find the loose pieces if the damage had not been recent.

. . . Gambal [then] recounted what happened the day of the accident[, testifying] that he was a contractor and that Shower worked for him. On the morning of the accident, he picked up Shower in his van and drove to a job site in Hanover. At the site, the two smoked crack cocaine together. The two then drove to Baltimore to get more crack cocaine. After doing so, the two returned to Pennsylvania in the afternoon but soon drove back to Baltimore, this time buying crack cocaine and heroin. While there, Shower ingested the heroin.

The two left Baltimore around 5 or 5:30 p.m. As they drove home, Shower took over driving because he wanted to go to his methadone clinic. When he realized the clinic was closed, Shower drove back to Hanover and wanted to get more drugs. Because he needed to go alone to get the drugs, Shower dropped Gambal off at a local bar and drove off in the van.

According to Gambal, Shower came back about 20 minutes later. As soon as he returned, Shower told Gambal that he needed to drive the van. Gambal assumed Shower had drugs on him and took over driving the van. Not long after, however, the police pulled the van over. Gambal recalled he was nervous at first but was fine after the police told him the reason for the stop. After the police released them, Shower wanted to go home. As they

drove, the two did not discuss what happened. When they finally arrived, Shower got out of the van without waiting for Gambal to come to a complete stop. . . Gambal then went back to Baltimore to get more crack cocaine before returning to Pennsylvania and being arrested.

The Commonwealth's final witness was the lead investigator, Officer Jared Auman. In October 2018, he re-interviewed Mathew Markle about seeing the van's driver after the accident. Officer Auman showed Markle two photo arrays—one with Gambal in it, the other with Shower in it. Markle made no identification in the first array that included Gambal. In the second array, however, Markle selected four individuals as possibly being the driver, including Shower.

Officer Auman further testified about Shower's post-accident statements. Shower gave his first statement the day after the accident. In that statement, he claimed that he was asleep while Gambal drove the van and that he never heard anything. Officer Auman re-interviewed Shower in May 2017 after obtaining a prison phone call in which Gambal told his mother that Shower dropped him off to get drugs. Shower again denied that he drove the van the night of the accident. In August 2017, however, Shower reached out to the police to give a third statement. Though he still denied driving the van, Shower now claimed that he heard a thud while Gambal was driving. When Shower asked what happened, Gambal responded that he hit something. Gambal then pulled over farther down the road. According to Shower, Gambal was "pale white" and said, "I believe I just hit a kid."

*Commonwealth v. Shower*, No. 1071 MDA 2020, 2021 WL 2395955, *1-3 (Pa. Super. filed June 9, 2021) (unpublished memorandum).

For the purpose of our present analysis, we additionally highlight the evidence at trial specifically touching upon Appellant's drug use and intoxication on the date of the accident. As discussed above, Gambal testified that he and Appellant smoked crack cocaine when they first arrived at the construction site in the morning, the two then smoked crack cocaine during a

morning excursion to Baltimore, and they smoked crack cocaine again when they visited Baltimore in the afternoon; Appellant also used heroin intravenously during the afternoon trip. N.T. Trial at 389-95, 428. According to Gambal, after returning to Pennsylvania, Appellant left Gambal at a bar and drove in Gambal's van to buy more drugs in Hanover, returning 20 minutes later. *Id.* at 399-405, 430.

Upon Appellant's return, Gambal then drove away with Appellant in the passenger seat, but they were pulled over just after leaving the bar. *Id.* at 406-07, 244-45. Officer Carbaugh initiated the traffic stop at 7:30 p.m., approximately 21 minutes after the crash that caused D.W.'s death. *Id.* at 242-46. During the traffic stop, Officer Carbaugh concluded that Appellant "was extremely intoxicated" after observing Appellant seated in the passenger seat and attempting to have a conversation with him. *Id.* at 248-51. Officer Carbaugh related that Appellant was "very difficult to speak with, very difficult to get words out of him at the time," and he kept repeating to the officer "aren't you cold, aren't you cold." *Id.* at 251. Officer Carbaugh stated that the only information he obtained from Appellant in response to questions about whether he had driven in the vicinity of the scene of the accident was Appellant's statement that he and Gambal had traveled to Maryland to obtain methadone. *Id.* at 251-52, 265.

Finally, we note that Officer Jared Aumen, the lead investigator who spoke with Appellant on several occasions during the course of the investigation, testified that Appellant stated during a November 15, 2018

interview that the reason that his account was shifting during the course of the interviews was because he was "high as shit and it was coming back to [him] in pieces." *Id.* at 501-02.

Following trial, the jury found Appellant guilty of accidents involving death or personal injury and driving under the influence (DUI)—controlled substances.[2] The trial court then sentenced Appellant to serve 5 to 10 years' imprisonment for accidents involving death or personal injury and a consecutive 1 to 5 years' imprisonment for DUI, resulting in a 6-to-15-year aggregate sentence. On direct appeal, we first rejected Appellant's claim that there was insufficient evidence to show that he knew or should have known that he was involved in an accident that resulted in death or personal injury. *Id.* at *3-5. Addressing his second claim that he was not given proper credit for 415 days he spent in pre-trial detention, we vacated Appellant's judgment of sentence and remanded to allow the trial court to determine whether this time should be allocated to his sentence on the instant charges or towards a probation violation on a prior case. *Id.* at *5-6.

On September 20, 2021, Appellant filed a *pro se* PCRA petition. On September 21, 2021, the trial court held a hearing and then issued an order that same day reimposing the term of imprisonment discussed above and crediting the 415 days towards the sentence in the instant case. On October 25, 2021, the PCRA court appointed counsel to represent Appellant. On July

---

[2] 75 Pa.C.S. §§ 3742(a) and 3802(d)(2), respectively.

14, 2022, PCRA counsel filed an amended petition, raising the ineffective assistance of counsel issue that is the subject of this appeal. A hearing was held on August 5, 2022, at which Appellant's trial counsel, Eric White, Esquire (trial counsel), and direct appeal counsel, Brian McNeil, Esquire (appellate counsel), testified. On the same date as the hearing, the PCRA court entered an order denying Appellant relief under the PCRA. Appellant then filed this timely appeal.[3]

Appellant raises the following issue on appeal:

Whether the PCRA court erred in denying postconviction collateral relief based on the claim that trial counsel and/or appellate counsel was ineffective for failure to challenge the sufficiency of the evidence at trial, and to support the guilty verdict, to establish that Appellant[] was under the influence of a drug, or combination of drugs, to a degree that impaired his ability to safely drive/operate the vehicle for the offense of driving under the influence of controlled substances 75 Pa.[C.S. §] 3802(d)(2)?

Appellant's Brief at 4 (unnecessary capitalization omitted).

Prior to reaching the merits of this appeal, we must address whether the PCRA court had jurisdiction to consider Appellant's PCRA petition. Pursuant to the PCRA, a petition "shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the

---

[3] In compliance with the PCRA court's directive, Appellant filed a concise statement of errors complained of on appeal on September 22, 2022. The PCRA court filed a Pa.R.A.P. 1925(a) opinion on October 31, 2022.

Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

Appellant filed his *pro se* PCRA petition on September 20, 2021, the day **before** the trial court entered its order addressing the proper computation of Appellant's time-credit for pre-trial detention, the issue to be addressed on remand from our decision in Appellant's direct appeal. Therefore, on the date Appellant filed his *pro se* petition there was no judgment of sentence in effect, as we had vacated the original judgment of sentence in our decision on direct appeal. **See Shower**, 2021 WL 2395955, *6.

Clearly, Appellant's September 20, 2021 *pro se* PCRA petition was premature as he did not wait until a new judgment of sentence was imposed, let alone until it became final upon the expiration of the time period for seeking direct review. **See** 42 Pa.C.S. § 9545(b)(1), (3); Pa.R.A.P. 903(a) (appeal from judgment of sentence must be taken within 30 days); **Commonwealth v. Ballance**, 203 A.3d 1027, 1031 (Pa. Super. 2019) (when a timely direct appeal is not filed, the one-year period for filing a PCRA petition "commences upon the actual expiration of the time period allowed for seeking direct review, as specified in the PCRA") (citation omitted). A premature PCRA petition is a legal nullity, over which a court of common pleas lacks authority to consider. **Commonwealth v. Smith**, 244 A.3d 13, 17 (Pa. Super. 2020). As this Court has explained, the proper course for a court facing a premature PCRA petition is to dismiss the petition without prejudice to allow the petitioner the

opportunity to file a petition once the time for direct appeal has expired. ***Id.*** at 16-17; ***Commonwealth v. Seay***, 814 A.2d 1240, 1241 (Pa. Super. 2003).

In the present case, the PCRA court did not dismiss Appellant's premature petition. Nevertheless, while the *pro se* petition is a nullity, we conclude that, under the unique circumstances of this case, the PCRA court properly addressed Appellant's claims for PCRA relief. On October 25, 2021, following Appellant's premature petition and after Appellant's 30-day appeal period had run, the PCRA court appointed counsel to represent Appellant in the PCRA proceeding.[4] Appellant's appointed counsel then filed a petition on his behalf on July 14, 2022, which was within one year of the date that his September 21, 2021 judgment of sentence became final. 42 Pa.C.S. § 9545(b)(3). Thus, while improperly titled an amended petition as the original petition had no legal effect, the July 14, 2022 petition constituted a timely first petition on Appellant's behalf. 42 Pa.C.S. § 9545(b)(1); ***see also Commonwealth v. Kubis***, 808 A.2d 196, 198, 201 & n.4 (Pa. Super. 2002) (premature petition was not cognizable under PCRA and therefore subsequently filed counseled petition constituted first petition). Accordingly,

_____

[4] The Rules of Criminal Procedure direct that counsel is to be appointed when a petitioner files a first PCRA petition. Pa.R.Crim.P. 904(C), Comment. Because Appellant's premature petition was a legal nullity, his right to assistance of counsel was thus not yet triggered. ***See Commonwealth v. Robinson***, 970 A.2d 455, 458 (Pa. Super. 2009) (*en banc*) (noting that the rule-based right to counsel attaches when the petitioner files a first PCRA petition). However, appointment of counsel was not improper as a PCRA court has the discretion to appoint counsel to represent a defendant "whenever the interests of justice require it." Pa.R.Crim.P. 904(E), Comment.

the PCRA court was not without jurisdiction when it ruled on Appellant's claims set forth in his counseled, timely PCRA petition. *Cf. Smith*, 244 A.3d at 15-17 (quashing appeal from dismissal of PCRA relief where *pro se* petition was filed while direct appeal was pending, appointed counsel filed petition to withdraw and no-merit letter after appeal became final, and petition was dismissed after Pa.R.Crim.P. 907 notice was provided). We therefore may proceed to address the substantive issues raised in this appeal.[5]

Appellant argues that trial counsel and appellate counsel were ineffective for failing to raise a claim of insufficient evidence as to his DUI—controlled substances conviction because the Commonwealth did not show that he was incapable of safe driving at the time of the accident that resulted in D.W.'s death. Appellant asserts that there was no testimonial or other evidence regarding his unsafe driving or his physical demeanor at the time of the accident, no chemical testing after the accident, and no expert evidence to establish his impairment. Appellant acknowledges that Gambal's testimony and his own statements established that he had consumed cocaine and heroin earlier in the day, but he maintains that this evidence showed that he was no longer impaired at the time of the accident as he was on his way to acquire more drugs. Further, Appellant contends that Officer Carbaugh's testimony

_____

[5] We remind the lower court that, in future cases where it receives a premature PCRA petition, it should follow the procedure set forth in **Smith** and dismiss the petition without prejudice and with instructions that a timely petition may be filed after the judgment of sentence becomes final. 244 A.3d at 16-17.

that he appeared highly intoxicated during the traffic stop after the accident was devoid of any specific observations as to Appellant's behavior that led to the officer's conclusion. Appellant avers that trial and appellate counsel lacked any reasonable basis for not raising this appellate challenge as it has clear arguable merit and that he was prejudiced as this claim could have provided him relief on direct appeal through the vacation of his conviction on the DUI—controlled substances count.

We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and its legal conclusions are free of error. **Commonwealth v. Small**, 238 A.3d 1267, 1280 (Pa. 2020). When supported by the record, the PCRA court's factual findings and credibility determinations are binding on this Court, but we review the lower court's legal conclusions under a *de novo* standard of review. **Id.** Our scope of review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the Commonwealth, the party who prevailed below. **Id.**

In assessing a claim of ineffective assistance under the PCRA, we begin our analysis with the presumption that counsel has rendered effective assistance. **Commonwealth v. Reid**, 259 A.3d 395, 405 (Pa. 2021). To overcome the presumption, the petitioner must show that:

> (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability

that but for counsel's act or omission, the outcome of the proceeding would have been different.

*Id.* (citation and quotation marks omitted). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. *Id.*

In this case, the PCRA court concluded that there was no arguable merit to Appellant's claim of ineffectiveness by trial or appellate counsel in not raising a sufficiency challenge to the DUI conviction, noting there was "not only sufficient but substantial evidence" demonstrating Appellant's impairment due to the influence of drugs. Order, 8/5/22, at 2-4. Furthermore, citing the PCRA hearing testimony of trial and appellate counsel, the PCRA court found that both attorneys had a reasonable basis for not taking "a kitchen sink approach" and instead "focus[ing] on the issues with the most merit with impairment due to drugs at the time of the incident being one on which [Appellant] would not prevail." *Id.* at 4-5; *see also* N.T., 8/5/22, at 8-19, 27-39.

Upon review, we first quickly dispose of Appellant's claim of trial counsel's ineffectiveness as lacking arguable merit. Appellant does not allege any deficiency in trial counsel's strategy or his performance during trial, but instead Appellant solely targets the issue of whether trial counsel should have preserved the DUI sufficiency claim as an appellate issue. This claim must fail because a defendant is under no obligation to raise a sufficiency claim at trial; instead, a sufficiency claim may be argued on appeal even where counsel does not raise the issue at trial or file a post-verdict or post-sentence motion. *See*

Pa.R.Crim.P. 606(A)(7) ("A defendant may challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged [through, one of various methods, including] a challenge to the sufficiency of the evidence made on appeal."); *accord Commonwealth v. Kennedy*, 151 A.3d 1117, 1121 n.11 (Pa. Super. 2016); *Commonwealth v. Gezovich*, 7 A.3d 300, 302 n.2 (Pa. Super. 2010). Furthermore, while a defendant must raise a sufficiency claim in his Pa.R.A.P. 1925(b) statement, identifying the specific elements that he wishes to challenge, *see, e.g.*, *Commonwealth v. Ellison*, 213 A.3d 312, 320-21 (Pa. Super. 2019), trial counsel handed the case off to appellate counsel prior to the filing of the Rule 1925(b) statement. N.T., 8/5/22, at 6, 21-22, 25-26. Therefore, trial counsel cannot be ineffective for not raising the DUI sufficiency claim.[6]

Turning to the ineffectiveness claim concerning appellate counsel, we conclude that the record supports the PCRA court's determination that the DUI sufficiency claim lacked arguable merit. A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. *Commonwealth v. Smith*, 234 A.3d 576, 581 (Pa. 2020). When reviewing the sufficiency of the evidence, we must determine whether

---

[6] Although the PCRA court did not base its decision that this claim lacked arguable merit on the fact that trial counsel was not required to preserve the sufficiency claim for appeal, we may affirm the PCRA court's decision on any basis apparent on the record. *Commonwealth v. Elliott*, 249 A.3d 1190, 1193 n.3 (Pa. Super. 2021); *Commonwealth v. Pou*, 201 A.3d 735, 740 (Pa. Super. 2018).

the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. *Id.* "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Bowens*, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* (citation omitted). Finally, we note that the trier of fact has the authority to determine the weight of the evidence and credibility of the witnesses and is free to believe all, part, or none of the evidence. *Id.* at 741.

Appellant was convicted of DUI under Section 3802(d)(2) of the Vehicle Code, which provides as follows:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> * * *
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(2). In order to obtain a conviction under Section 3802(d)(2), the Commonwealth must show "that [the defendant] was under the influence of a drug to a degree that impairs his or her ability to safely

drive[] or operate a vehicle." ***Commonwealth v. Williamson***, 962 A.2d 1200, 1204 (Pa. Super. 2008) (citation and quotation marks omitted).

Section 3802(d)(2) "by its plain text does not require that a drug be measured in the defendant's blood, nor does it specify any particular manner by which the Commonwealth is required to prove that the defendant was under the influence of a drug." ***Commonwealth v. Griffith***, 32 A.3d 1231, 1239 (Pa. 2011); ***see also Williamson***, 962 A.2d at 1204.  This provision "requires only proof that the driver was under the influence of a drug or combination of drugs to a degree that the ability to drive is impaired." ***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa. Super. 2012) (citations and quotation marks omitted).

Furthermore, expert testimony is not required to establish impairment under Section 3802(d)(2).  ***Griffith***, 32 A.3d at 1238; ***Commonwealth v. Gause***, 164 A.3d 532, 538 (Pa. Super. 2017) (*en banc*).  A "lay witness[] may testify to someone's readily observable physical condition or appearance that does not require medical training." ***Gause***, 164 A.3d at 538 (citation omitted).  Likewise, "[e]vidence of erratic driving is not a necessary precursor to a finding" that an individual is incapable of safe driving under the DUI statute. ***Commonwealth v. Mobley***, 14 A.3d 887, 890 (Pa. Super. 2011) (citation omitted); ***see also Gause***, 164 A.3d at 541.

We discern no legal error in the PCRA court's conclusion that there was no arguable merit to a potential appellate argument that the evidence was insufficient to show to show Appellant's impairment under Section 3802(d)(2).

First, we note that there was substantial evidence of Appellant's drug use throughout the day on November 22, 2016. This included Appellant's use of crack cocaine upon arriving at the work site in York County, his subsequent use of crack cocaine during two separate trips to Baltimore in the morning and afternoon, and his intravenous use of heroin during the second Baltimore visit. N.T. Trial at 389-95, 428. Upon their return to Hanover, Appellant then drove in Gambal's van to a local dealer to purchase more drugs. *Id.* at 399-403. Appellant also admitted in later conversations with the police that he was "high as shit" around the time of the accident. *Id.* at 501-02. While Appellant argues that the local trip shows that he had sobered up, *see* Appellant's Brief at 22, 27-28, his argument is belied by his own statement to police. In any event, such a reading of the trial record runs counter to our standard of review of sufficiency claims requiring that we view the evidence and any reasonable inferences therefrom in the light most reasonable to the Commonwealth. *Smith*, 234 A.3d at 581. The jury could reasonably infer based upon Appellant's all-day crack cocaine and heroin binge that he remained "under the influence of a drug or combination of drugs," 75 Pa.C.S. § 3802(d)(2), when he drove past D.W.'s house.

The evidence also supported a determination beyond a reasonable doubt that Appellant's drug use "impair[ed his] ability to safely drive, operate or be in actual physical control of the movement of the vehicle." *Id.* Officer Carbaugh personally observed Appellant's impairment during a traffic stop that commenced at 7:30 p.m. on November 22, 2016, only 21 minutes after

D.W. was struck by the van, which was established by surveillance video to have occurred at 7:09 p.m. *Id.* at 135, 137-38, 147-48, 242-46. Officer Carbaugh determined that Appellant was "extremely intoxicated," noting that Appellant could not answer basic questions regarding where he had been that evening, while repeating the phrase "aren't you cold." *Id.* at 248-52, 265. The officer's lay opinion of Appellant's condition during the traffic stop was properly allowed as evidence to demonstrate Appellant's impairment just minutes after he had been driving. *See Gause*, 164 A.3d at 538-39 (noting that "lay witnesses may testify to someone's readily observable physical condition or appearance that does not require medical training" and that "staggering, stumbling, glassy or bloodshot eyes, and slurred speech" were the type of "ordinary signs of intoxication discernable by a layperson") (citation omitted); *see also Griffith*, 32 A.3d at 1238 (expert witness is not required to establish impairment in a prosecution under Section 3802(d)(2)).

As further evidence of Appellant's compromised state, the jury was also free to consider the fact that Appellant made no effort to stop or return to the scene of an accident in which he knew or should have known that he struck and, at a minimum, injured a child. N.T. Trial at 161-63 (witness observed van continue to drive for at least 8 seconds after accident, with no effort to stop or turn around); *id.* at 211-12 (collision reconstructionist expert testified that absence of tire marks showed no attempt to brake or take evasive action before or after van struck D.W.). In addition, as noted above, Appellant admitted that he was "high as shit" at the time of the accident resulting in

memory lapses concerning the events of the evening of the date in question. *Id.* at 501-02.

Accordingly, we agree with the PCRA court that Appellant could not have prevailed on a direct appeal claim of insufficiency of the evidence as to his DUI—controlled substances conviction and therefore appellate counsel was not ineffective for raising that claim. We therefore affirm the order denying Appellant relief under the PCRA.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2023