J-A10039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK T. STORMS | : | |
| | : | |
| Appellant | : | No. 193 EDA 2023 |

Appeal from the PCRA Order Entered January 19, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004007-2016

BEFORE:  PANELLA, P.J.E., DUBOW, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED AUGUST 18, 2025**

Mark T. Storms ("Storms") appeals from the order entered by the Montgomery County Court of Common Pleas dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  Storms argues that his trial counsel was ineffective for failing to call witnesses at trial and the PCRA court erred in dismissing his petition without a hearing.  After review, we affirm.

This Court previously set forth the underlying factual and procedural history:

> [Storms] shot and killed 27–year–old Robert E. Braxton, III [("Decedent")], on April 24, 2016, during a Sunday morning service at Keystone Fellowship Church in Montgomery Township, Montgomery County.  The events leading to the shooting, which occurred in the midst of numerous parishioners, began when

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[Decedent] entered the church in an agitated state shortly after the service had begun and moved into a row of chairs in the overflow seating area. A fellow parishioner in the row behind tapped [Decedent] on the back to alert him that he may be in a section of seats already occupied by others who had momentarily left. [Decedent] told the person not to touch him, using obscene language, and created a verbal disturbance that prompted ushers to try to calm him down.[fn1] During this time, [Decedent] told anyone who attempted to intervene to leave him alone. An associate pastor, seeing that the ushers' efforts only exacerbated [Decedent's] agitation, had them back away and directed someone to call the police.

[fn1] [Storms] told investigators he saw [Decedent] pushing the parishioner, but the parishioner testified at trial that [Decedent] never touched him nor got close to him.

[Storms], who was sitting nearby with his wife and young son, did not believe enough was being done and decided to intervene.[fn2] He was armed at the time with a loaded 9-millimeter semi-automatic pistol concealed in a holster on his right hip.[fn3] [Storms] had observed [Decedent] become agitated each time someone addressed him and believed [Decedent] would not leave the church without violence.[fn4] He admittedly approached [Decedent] not with the intent to calm him down but to get him out of the church.

[fn2] [Storms] had no position of authority with the church at the time and was not a law enforcement officer.

[fn3] [Storms] had a permit to carry a concealed weapon. As soon will become relevant, he also obtained a gold concealed weapon permit "badge." The unofficial badge is not issued in connection with the permit but can be obtained on the Internet.

[fn4] While [Storms] attempted in his trial testimony to distance himself from his statement to investigators that he did not think [Decedent] would leave without violence, the jury as fact-finder was free to disbelieve his self-serving testimony.

With the two separated by a row of chairs, [Storms] asked [Decedent] to go outside with him. When [Decedent] refused,

- 2 -

[Storms] flashed his unofficial concealed weapon permit badge. [Decedent] recognized it as a fake, telling [Storms] as much in colorful language. [Storms] then revealed his 9–millimeter pistol. [Decedent] reacted by punching [Storms] in the face and proceeding toward him. [Storms] absorbed the blow and, rather than retreat down the open aisle behind him or call for help from the hundreds of people in church, squared himself into a ready fire stance and shot the unarmed [Decedent] twice.[fn5] One of the bullets pierced [Decedent]'s heart and he died soon thereafter despite life-saving efforts by fellow parishioners and emergency medical responders.

[fn5] [Storms] testified that [Decedent] did not have a visible weapon and no trial witness stated they ever saw [Decedent] in possession of a weapon.

\* \* \*

[Storms] was arrested and charged with voluntary manslaughter and [recklessly endangering another person, the latter charge being] in reference to the other parishioners. At the three-day jury trial, the following testimony was elicited. After the ushers backed away and left Decedent alone, one of the pastors, Rusty S. Williams, III, testified that he was not yelling. N.T., 11/1/[20]16, at 288–89. However, after [Storms] approached and asked Decedent to go outside, Williams testified he could see Decedent starting to yell and that "things were escalating again." [*Id.*] at 289–90; *see also* N.T., 11/2/[20]16, at 16–17, 19 (Joseph McDevitt, another witness, testified that Decedent had calmed down prior to [Storms] speaking with him). Williams' police statement, which the Commonwealth used to refresh his recollection and was admitted into evidence without objection, also reflected Williams' belief that [Storms'] "actions escalated the situation more than what it had to be." N.T., 11/1/[20]16, at 315; Commonwealth's Ex. 30.

When the incident escalated and Decedent punched [Storms], [Storms] shot Decedent from a distance of about eight feet. N.T., 11/1/[20]16, at 133. Lauren Hendrie, another witness, testified that no one and nothing impeded [Storms'] ability to retreat from the situation. *Id.* at 46. Jeffrey Lemon similarly testified that no person and nothing was impeding [Storms] from leaving the area. *Id.* at 166.

- 3 -

[Storms] claimed self-defense. [Storms] testified he had no opportunity to retreat after being punched. N.T., 11/2/[20]16, at 59. [Storms] also believed that Decedent was "younger, bigger, faster, and stronger" than him, could kill him, and would take his gun and use it. *Id.* at 57.

The jury found [Storms] guilty and the court ordered a pre-sentence investigation and held a hearing .... The court imposed its sentence of ten to twenty years' imprisonment for voluntary manslaughter, followed by two years' probation for REAP. The court denied [Storms'] post-sentence motion.

*Commonwealth v. Storms*, 329 A.3d 633, **1-2 (Pa. Super. Oct. 18, 2024) (non-precedential decision) (some citations omitted, footnotes in original).

This Court affirmed the judgment of sentence and our Supreme Court denied allowance of appeal on February 26, 2019. *See Commonwealth v. Storms*, 1860 EDA 2017, 2018 WL 1280933 (Pa. Super. Mar. 13, 2018) (non-precedential decision), *appeal denied*, 203 A.3d 211 (Pa. 2019).

On April 14, 2020, Storms pro se filed a timely first PCRA petition. The PCRA court appointed counsel, who filed an amended petition, raising numerous claims of trial counsel's ineffectiveness. Counsel attached certifications that Storms and his parents, Thomas and Eileen Storms, would testify at the hearing. The Commonwealth filed a response to the petition. On October 25, 2022, the PCRA court issued a notice of intent to dismiss the amended petition without a hearing pursuant to Pa.R.Crim.P. 907. Storms filed a response, again arguing that an evidentiary hearing was required as he and his parents would testify. Subsequently, the PCRA court dismissed the petition without a hearing.

Storms filed a timely notice of appeal. The PCRA court ordered Storms to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Storms' counsel did not file a Rule 1925(b) concise statement. The PCRA court issued a Rule 1925(a) opinion finding Storms' claims waived. On appeal, pursuant to Pa.R.A.P. 1925(c)(3),[2] the Commonwealth filed an application for remand based on PCRA counsel's ineffectiveness for failing to file a concise statement.

This Court concluded that there was either a breakdown in court processes or ineffective assistance by counsel that hampered review of Storms' claims. *Storms*, 329 A.3d 633, *4. Therefore, this Court remanded the matter for the PCRA court to hold a hearing to make this determination. *Id.* If counsel was at fault, this Court directed the PCRA court to remove counsel, appoint new counsel and issue a new order pursuant to Rule 1925(b). *Id.* However, if counsel was not at fault, or the PCRA court was at fault for failing to communicate the Rule 1925(b) order to counsel, this Court directed

---

[2] Rule 1925(c)(3) states the following:

> If an appellant represented by counsel in a criminal case was ordered to file and serve a Statement and either failed to do so, or untimely filed or served a Statement, such that the appellate court is convinced that counsel has been per se ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a Statement nunc pro tunc, and the preparation and filing of an opinion by the judge.

Pa.R.A.P. 1925(c)(3).

- 5 -

that counsel be permitted to file a concise statement of errors complained of on appeal. *Id.*

The PCRA court held a hearing,[3] and afterwards directed Storms' PCRA counsel to file a concise statement. Storms filed a timely Rule 1925(b) concise statement, and the PCRA court issued an opinion.

On appeal, Storms raises the following questions for our review:

I.   Did the [PCRA] court err in its determination, without an evidentiary hearing, that trial counsel provided effective assistance of counsel, more specifically where trial counsel failed to call essential witnesses and failed to produce and call an expert as demonstrated in [Storms'] pro se petition and [Storms'] amended petition?

II.  Did the [PCRA] court not err in dismissing [Storms'] amended [PCRA] petition, which was timely filed on May 3, 2022, without conducting an evidentiary hearing in violation of Pa.R.Crim.P. 908(a)(2) whereby [Storms'] pro se petition and [Storms'] amended petition clearly and succinctly raised genuine issues of material fact existed whereby the, [sic] and the court's order lacked support for its finding?

Storms's Brief at 7 (unnecessary capitalization omitted; issues reordered for ease of disposition).

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion.

_____

[3] A transcript of this hearing was not included in the certified record.

*Commonwealth v. Wilson*, 273 A.3d 13, 18 (Pa. Super. 2022) (citations omitted).

Storms argues that trial counsel failed to fully develop his self-defense claim. Storms' Brief at 21-22. He asserts that counsel needed to, but failed to, call an expert to testify to his competence and training in using firearms, present evidence of his mental stability, and call witnesses to support his self-defense claim. *Id.* at 22, 24. Storms further maintains that "uncalled witness(es) clearly existed as demonstrated by prior statements to authorities and could have been available to testify, if called. Counsel never investigated any of the potential defense witnesses despite being urged by [Storms] throughout the proceedings." *Id.* at 24. According to Storms, counsel never spoke to him about these witnesses and undertook no efforts to secure the available witnesses. *Id.* at 24-25. He argues that these witnesses would have provided favorable testimony, as they would have refuted inconsistent eyewitness testimony. *Id.* at 24, 26. Storms additionally contends that counsel's inaction lacked any reasonable strategic basis. *Id.* at 26-27.

To establish a claim for ineffective assistance of counsel, a PCRA petitioner must plead and prove, by a preponderance of evidence, that

> (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. Counsel is presumed to be effective, and the burden is on [Storms] to prove otherwise. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

*Commonwealth v. Felix*, 303 A.3d 816, 819 (Pa. Super. 2023) (citations and quotation marks omitted). "The failure to satisfy any one of the ineffectiveness prongs precludes relief." *Commonwealth v. Drayton*, 313 A.3d 954, 960 (Pa. 2024) (citation omitted). Additionally, the failure to call a witness can constitute ineffective assistance of counsel only where the petitioner shows (1) that the witness existed; (2) was available to testify; (3) was willing to testify on the defendant's behalf; (4) that trial counsel knew or should have known of witness' existence; and (5) that the witness' testimony would have been helpful to the defendant. *Commonwealth v. Sneed*, 45 A.3d 1096, 1108-09 (Pa. 2012).

Here, before the PCRA court and now again this Court on appeal, Storms fails to identify any of the alleged witnesses, or argue that the absence of the unidentified individuals' testimony denied him a fair trial. *See* PCRA Court Opinion, 3/27/2025, at 6 ("[Storms] fails to even identify any 'essential witnesses' or experts not called, or to enlighten the court on how that testimony would alter the outcome of his case."). As such, Storms' claim of trial counsel's ineffectiveness fails. *See Commonwealth v. Treiber*, 121 A.3d 435, 464 (Pa. 2015) (concluding that petitioner's failure to identify potential witnesses is grounds for denial of relief); *see also Commonwealth v. Smith*, 167 A.3d 782, 793 (Pa. Super. 2017) (rejecting ineffectiveness

claim for failure to call an expert witness where petitioner failed to demonstrate an expert existed or was available and willing to testify at trial).[4]

Storms next contends that the PCRA court abused its discretion in failing to hold an evidentiary hearing on his petition. Storms' Brief at 20-21. Storms argues that the PCRA dismissed his claims, simply finding they lacked merit, without addressing the witnesses available to substantiate his ineffectiveness claims. *Id.* at 21, 26.

With respect to Storms' claim that the PCRA court erred in dismissing his petition without a hearing, we have recognized:

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Smith*, 244 A.3d 13, 16 (Pa. Super. 2020) (citation and quotation marks omitted).

_____

[4] We note that Storms also claims that counsel failed to object to or cross-examine witnesses who gave inconsistent statements. Storms' Brief at 21-22. However, Storms fails to identify any such statements or cite to the record in support of his claim, waiving the claim for review. *See Commonwealth v. Taylor*, 277 A.3d 577, 591 (Pa. Super. 2022) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review that claim is waived") (citation omitted); *see also* Pa.R.A.P. 2119(a), (c).

The record reflects that Storms attached certifications to his amended PCRA petition indicating that his parents, Timothy and Eileen Storms, and he would testify at a PCRA hearing in support of his claims. PCRA Petition, 5/3/2022, at 66-68. Storms baldly alleged that they would discuss interactions with trial counsel and other occurrences during Storms' trial. *Id.* However, Storms' failed to indicate whether they would testify to any issues of material fact that, if resolved in his favor, would entitle him to relief. *See Smith*, 244 A.3d at 16. Importantly, as we observed above, Storms does not identify any witnesses trial counsel allegedly failed to call at trial, nor does he state that these unnamed witnesses were available to testify at the hearing. Thus, Storms' PCRA petition failed to state any genuine issues of material fact that required a hearing to resolve, and the PCRA court thus did not abuse its discretion in dismissing Storms' petition without a hearing.

As we conclude that the PCRA court's decision is supported by the record, we affirm the order dismissing Storms' PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/18/2025

- 10 -